## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**BENVINDO RODRIGUES, ANDRE PINTO,**
**MARCOS DASILVA, GIVANILDO SOUSA,**
**OLAVO PEREIRA-MARTINS, and**
**DANIELSON MARTINS-RODRIGUE,**
**Individually and on Behalf of All Similarly-**
**Situated Employees,**
              *Plaintiffs,*

**v.**                                                              C.A. NO. _____

**WCP CONSTRUCTION, CORP.; RONDON**
**SIDING CORP.; EXCEL GROUP CORP;**
**NATIONAL LUMBER COMPANY;**
**RELIABLE TRUSS AND COMPONENTS,**
**INC.; WEDER PEREIRA; CRISTINA**
**PEREIRA; WAGNER SOUZA; JOEL DA**
**COSTA; MANUEL PINA; and STEVEN**
**KAITZ,**
              *Defendants.*

## INDIVIDUAL, CLASS, AND COLLECTIVE ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiffs Benvindo Rodrigues, Andre Pinto, Marcos Dasilva, Givanildo Sousa,

Olavo Pereira-Martins, and Danielson Martins-Rodrigue (together, the "Named Plaintiffs"),

individually and on behalf of all similarly-situated employees, by and through their counsel

of Muller Law LLC, do hereby state and allege as follows:

## INTRODUCTION

1.      This is an action seeking payment of overtime premiums and other damages due

to the Named Plaintiffs and other similarly-situated hourly-payed workers (together, "Plaintiffs")

under federal and state law.  Defendants exploited these workers, all or most of whom were

immigrants with little knowledge of their rights.  Defendants willfully failed to pay Plaintiffs

premium wages for overtime work, timely wages, wages for all hours worked, and paid sick leave.  In addition, this action seeks payment for damages resulting from Defendants' wrongful termination of certain Plaintiffs in retaliation for the wage complaint filed by Rodrigues with the Massachusetts Attorney General's office (the "AG") on behalf of himself and similarly-situated coworkers (the "AG Complaint").

2.      One group of Plaintiffs ("NL Plaintiffs"), including the Named Plaintiffs, worked for all Defendants at National Lumber Company's lumber yard located at 200 Welby Road, New Bedford, Massachusetts ("New Bedford Lumber Yard") building wall panels.  A second, larger group of Plaintiffs ("Jobsite Plaintiffs"), including the Named Plaintiffs, worked for Defendants WCP Construction, Corp., Rondon Siding Corp., Excel Group Corp., Weder and Cristina Pereira, Wagner Sousa, and Joel Dacosta (together, "Pereira-Entity Defendants") at jobsites throughout Massachusetts as well as in some neighboring states.  Both sets of Plaintiffs suffered similar injustices.

## JURISDICTION AND VENUE

3.      Subject matter jurisdiction over this action is conferred on this court under the provisions of 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), as such claims form part of the same case or controversy and arise out of a common nucleus of operative facts as the Fair Labor Standards Act ("FLSA") claims alleged in this Complaint.

5.      Venue in this district is appropriate pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to the claims herein occurred in this district, primarily at the National Lumber Company lumber yard facility in New Bedford, Massachusetts.

## THE PARTIES

6.     Plaintiff Benvindo Rodrigues is a resident of New Bedford, Massachusetts.

7.     Plaintiff Andre Pinto is a resident of New Bedford, Massachusetts.

8.     Plaintiff Marcos Dasilva is a resident of New Bedford, Massachusetts.

9.     Plaintiff Givanildo Sousa is a resident of New Bedford, Massachusetts.

10.    Plaintiff Olavo Pereira-Martins is a resident of New Bedford, Massachusetts.

11.    Plaintiff Danielson Martins-Rodrigue is a resident of New Bedford,
Massachusetts.

12.    Defendant WCP Construction Corp. ("WCP") is a Massachusetts corporation,
with its primary headquarters in Malden, Massachusetts.

13.    Defendant Rondon Siding Corp. ("Rondon Siding") is a Massachusetts
corporation, with its primary headquarters in Malden, Massachusetts.

14.    Defendant Excel Group Corp. ("Excel") is a Massachusetts corporation, with its
primary headquarters in Norton, Massachusetts.

15.    Defendant National Lumber Company is a Massachusetts corporation, with its
primary headquarters in Malden, Massachusetts.

16.    Defendant Reliable Truss and Components, Inc. ("Reliable Truss"), is a
Massachusetts corporation, with its primary headquarters in Malden, Massachusetts.  Reliable
Truss is a wholly-owned subsidiary of National Lumber Company (together with Reliable Truss,
"National Lumber").  The National Lumber website describes Reliable Truss as a "Division" of
National Lumber Company and "Part of the National Lumber Family of Companies," and all of
the officers and directors of Reliable Truss are also officers and directors of National Lumber
Company.

17.     Defendant Weder C. Pereira is the Treasurer and Director of Excel and a is a resident of Norton, Massachusetts.

18.     Defendant Cristina Pereira is the President of Excel and is a resident of Norton, Massachusetts.

19.     Defendant Wagner Souza is the President, Treasurer, and Director of WCP and a resident of Massachusetts.

20.     Defendant Joel Dacosta is the President, Treasurer, and Director of Rondon Siding and a resident of Massachusetts.

21.     Defendant Manuel Pina is the President of National Lumber Company and the President and Treasurer of Reliable Truss, and a resident of Massachusetts.

22.     Defendant Steven Kaitz is the Treasurer, Secretary, Chief Executive Officer, and Director of National Lumber Company; Secretary, Chief Executive Officer, and Director of Reliable Truss; and a resident of Massachusetts.  Kaitz is also an owner of National Lumber Company and, as reported on the National Lumber Company website, is "involved in all aspects of daily activities" of the company.

23.     Each Plaintiff was employed by Defendants in Massachusetts within the applicable statute of limitations period and is entitled to the rights, protection and benefits provided under the FLSA and Massachusetts law.

## **FACTUAL ALLEGATIONS**

### A.     **Pereira-Entity Defendants**

24.     On information and belief, during the relevant time period, Weder and Cristina Pereira owned or otherwise controlled WCP, Rondon Siding, and Excel.

25.     On information and belief, during the relevant time period, Weder Pereira made or influenced key decisions regarding the business dealings of WCP, Rondon Siding, and Excel, including decisions regarding financial and payroll matters.

26.     On information and belief, during the relevant time period, Cristina Pereira kept the books for WCP, Rondon Siding, and/or Excel, including keeping records tracking financial and payroll matters.

27.     During the relevant time period, the Pereira-Entity Defendants employed workers to work on various construction jobsites, in Massachusetts (primarily) and in neighboring states.

28.     During the relevant time period, Weder and Cristina Pereira treated WCP, Rondon Siding, and Excel interchangeably with respect to employing and paying the Plaintiffs. For example, Jobsite Plaintiffs would be sent on projects as employees of WCP certain weeks and Excel other weeks, without any explanation to, or action by, Plaintiffs.  Further, regardless of whether Plaintiffs were allegedly working for WCP or Excel, paychecks would variously come from WCP, Rondon Siding, or Excel without any pattern or explanation.

29.     During the relevant time period, Wagner Sousa approved and signed paychecks paid by WCP to Plaintiffs and Joel Dacosta approved and signed paychecks paid by Rondon Siding to Plaintiffs.

**B.     National Lumber Arranged With the Pereira-Entity Defendants to Employ Workers at New Bedford Lumber Yard**

30.     During the relevant time period, National Lumber, through its wholly-owned subsidiary, Reliable Truss, operated a business designing and manufacturing wood roof trusses, wall panels, timber trusses, and floor panels ("Truss and Panel Manufacturing Business").

31.     During the relevant time period, National Lumber operated its Truss and Panel Manufacturing Business at the New Bedford Lumber Yard.

32.     On information and belief, during the relevant time period, Manuel Pina controlled significant aspects of the day-to-day operations of the Truss and Panel Manufacturing Business.  As stated in a magazine article linked to the National Lumber website referring to the Truss and Penal Manufacturing Business, "Pina is the company's president and has led the way for co-CEOs and sibling owners, Steven Kaitz and Margie Kaitz Seligman, to expand locations and launch a number of profit centers including a turn-key division which provides framing materials and labor for major building projects throughout the eastern U.S.  Pina convinced the Kaitz family to begin engineering and designing truss and I-joist systems.  In-house, he hired structural engineers, architects, expert builders and framing professionals."

33.     On information and belief, in or about 2014, Manuel Pina, directly or indirectly, informed Weder Pereira that National Lumber needed workers at the New Bedford Lumber Yard to build wall panels.

34.     At this time, the Pereira-Entity Defendants employed many workers, including some of the Named Plaintiffs and other Plaintiffs, to work at various construction jobsites in Massachusetts and neighboring states.

35.     On information and belief, Weder Pereira and the Pereira-Entity Defendants directly or indirectly arranged with Manuel Pina and National Lumber for the Named Plaintiffs and other Plaintiffs to work at the New Bedford Lumber Yard, and for National Lumber to pay for the workers by paying one or more of the Pereira-Entity Defendants in connection therewith. The Pereira-Entity Defendants continued the arrangement with National Lumber for over three years, until, on information and belief, at least January 5, 2018.  Many of the NL Plaintiffs worked primarily or exclusively at the New Bedford Lumber Yard during a substantial portion of this time frame.  During this time frame, the Pereira-Entity Defendants sent employees from

other jobsites and hired new employees to work at the New Bedford Lumber Yard. All of the employees the Pereira-Entity Defendants directed to work at the New Bedford Lumber Yard were immigrants.

**C.   National Lumber Controlled the Work of NL Plaintiffs Working at New Bedford Lumber Yard**

36.   In arranging for the NL Plaintiffs to work at the New Bedford Lumber Yard, Weder Pereira and the Pereira-Entity Defendants generally instructed the NL Plaintiffs, including the Named Plaintiffs, to report to the New Bedford Lumber Yard for work at 6 a.m. on their first day. The Pereira-Entity Defendants did not provide tools with which they were to perform the work or instructions regarding the work the employees were to perform.

37.   At the New Bedford Lumber Yard, the NL Plaintiffs, including the Named Plaintiffs, reported to one of the National Lumber supervisors (the "NL Supervisors"). The NL Supervisors in charge of wall panel construction were David Lopes, until approximately mid-September 2015, and Victor Botelho, thereafter. At various times, NL Supervisors Sean O'Connell and Timothy Silva also supervised the employees.

38.   Manuel Pina also periodically spent time at the New Bedford Lumber Yard, observing and inspecting the work being done by employees, including the NL Plaintiffs.

39.   The NL Supervisors generally directed the NL Plaintiffs to work at large tables, usually in groups of three to six men. The number of tables varied depending on the number of NL Plaintiffs working and the number of projects being worked on. The NL Supervisors determined the group each NL Plaintiff worked with.

40.   The NL Supervisors provided the initial instructions to new NL Plaintiffs.

41.   The NL Supervisors also determined what projects the NL Plaintiffs would work on. The NL Supervisors provided the plans describing the dimensions of the finished product

being built.  The NL Supervisors instructed the NL Plaintiffs where in the warehouse or yard to obtain the necessary raw materials.

42.     National Lumber provided all of the tools and raw materials the NL Plaintiffs used to build the wall panels.  On information and belief, some or all of the tools and raw materials, and some of the finished wall panels, were shipped across state lines.

43.     The NL Supervisors also determined the starting times, meal break, and ending times worked by the NL Plaintiffs.  The NL Supervisors instructed the NL Plaintiffs when to arrive for work, which generally was 6 a.m., and when and for how long to take an unpaid meal break, which was generally 30 minutes around noon.  The NL Supervisors dictated when the NL Plaintiffs left for the day, which was generally dependent on factors including the number of NL Plaintiffs working, the number and size of the panels being worked on, and the deadline by which National Lumber needed the panels to be completed.

44.     The NL Supervisors determined the number of days worked each week by the NL Plaintiffs, which was generally five or six, although it could be fewer during a holiday week or during a particularly slow period.

45.     By determining the hours each day and the number of days worked by the NL Plaintiffs each week, the NL Supervisors controlled the total amount of time worked by the NL Plaintiffs.

46.     The NL Supervisors also tracked and maintained records of the time the NL Plaintiffs worked.  NL Supervisor David Lopes tracked the hours worked by the NL Plaintiffs from the start of the NL Plaintiffs' work at the New Bedford Lumber Yard, in or around summer 2014, through approximately the first week in September, 2015, when he stopped supervising the NL Plaintiffs.  During the latter half of this time, from approximately February, 2015, until

approximately September, 2015, NL Supervisor Lopes prepared and signed weekly timesheet invoices listing the approximate start and end time of each NL Plaintiff each day, rounded to the half hour.  The invoices also set forth each NL Plaintiff's total weekly hours, which Mr. Lopes calculated by adding the total hours each day and subtracting a half hour each day for meal time.

47.     Starting in or around the second week in September 2015, NL Plaintiffs started using a National Lumber punch-clock at the New Bedford Lumber Yard, punching in and out to indicate when they arrived at work, went to a meal break, returned from a meal break, and left for the day.

48.     NL Supervisor Victor Botelho reviewed the punch cards each week.  The NL Supervisor made hand-written adjustments he determined were necessary, such as to correct a card when a NL Plaintiff forgot to punch in or out at the start or end of the day or for meal time or to add or subtract hours for other reasons.  The NL Supervisor tallied the hours and indicated the total hours worked by the NL Plaintiff that week.

49.     Starting in or about the second week of September, 2015, NL Supervisor Sean O'Connell prepared and signed the weekly timesheet invoices, setting forth the total hours worked by each NL Plaintiff working that week based on the punch-cards, as adjusted by NL Supervisor Botelho.

50.     Starting in or about February, 2015, National Lumber conveyed the hours worked by the NL Plaintiffs to the Pereira-Entity Defendants via the timesheet invoices.

51.     The Pereira-Entity Defendants used the timesheets prepared by the NL Supervisors to determine the time worked by, and the wages owed to, the NL Plaintiffs.

52.     In addition to the controlling the hours the NL Plaintiffs worked and the particular projects they worked on, National Lumber and the NL Supervisors also controlled the conditions

under which the NL Plaintiffs worked.  For example, National Lumber and the NL Supervisors determined the deadline under which the projects had to be completed and the speed at which the NL Plaintiffs had to work.  The NL Supervisors frequently observed the NL Plaintiffs while they were working and pushed them to work faster, creating a high-stress environment and sometimes leading to injuries.

53.     The NL Supervisors and other National Lumber employees charged with quality control at the New Bedford Lumber Yard inspected the NL Plaintiffs' finished products prior to the panels being loaded on trucks for shipping to jobsites to determine if the wall panels were satisfactory or had to be redone.

54.     The NL Supervisors frequently forced the NL Plaintiffs to lift heavy panels manually, unassisted by tools or equipment, while simultaneously providing tools and equipment to assist other non-immigrant National Lumber employees with similar tasks.  The NL Supervisors often forced the NL Plaintiffs to work outside in freezing cold temperature while simultaneously allowing other non-immigrant employees to work inside.

55.     National Lumber and the NL Supervisors supplied safety equipment to the NL Plaintiffs, however, the equipment provided was often inadequate and unsafe.

56.     On a few occasions, the NL Supervisors directed the NL Plaintiffs to work offsite at construction job sites other than the New Bedford Lumber Yard where the wall panels were being installed.  On these occasions, the NL Plaintiffs went to the jobsites in National Lumber trucks with National Lumber employees and supervisors.

57.     The NL Supervisors also had the authority to, and did, discipline, hire, and fire NL Plaintiffs.

58.     For example, the NL Supervisors would frequently chastise, belittle, and threaten NL Plaintiffs with termination for working too slowly or making mistakes. The NL Supervisors also threatened NL Plaintiffs with termination if they asked to leave due to illness or injury, and, on one or more occasions, terminated an NL Plaintiff for staying home or leaving early due to illness.

59.     On occasion, the NL Supervisors asked current NL Plaintiffs to recruit new workers and bring them to the New Bedford Lumber Yard. The NL Supervisor would then determine whether to hire the recruit to join the group working to build the wall panels; if the recruit was hired, the NL Supervisor included the recruit's name and hours on the timesheet invoice it provided to the Pereira-Entity Defendants.

60.     The NL Supervisors determined which NL Plaintiffs to lay off when work slowed, and the NL Supervisors decided whether and when to terminate a NL Plaintiff for any reason the NL Supervisor so decided.

**D.      Plaintiffs Regularly Worked Overtime Hours at the New Bedford Lumber Yard**

61.     During the relevant time period, the NL Supervisors required NL Plaintiffs to, and NL Plaintiffs did, work more than 40 hours in one or more workweeks.

62.     During the relevant time period, the NL Supervisors required many NL Plaintiffs, including the Named Plaintiffs, to, and many NL Plaintiffs, including the Named Plaintiffs, did, regularly work up to fifty or sixty hours a week.

63.     During the relevant time period, NL Supervisors required some NL Plaintiffs, including some of the Named Plaintiffs, to, and some NL Plaintiffs, including some of the Named Plaintiffs, did sometimes work up to seventy or more hours a week.

64.     During the relevant time period, most of the overtime worked by NL Plaintiffs was recorded on timesheets or punch-cards.

65.     During the relevant time period, National Lumber and the Pereira-Entity Defendants were aware that NL Plaintiffs frequently worked more than 40 hours a week at the New Bedford Lumber Yard.

**E.      Defendants Willfully Failed to Pay NL Plaintiffs Overtime Wages, Timely Wages, Wages for all Time Worked, and Earned Sick Time**

66.     During the relevant time period, Defendants followed a policy and practice of paying NL Plaintiffs for their work at the New Bedford Lumber Yard via checks from WCP or Rondon Siding and other entities.

67.     During the relevant time period, Defendants followed a policy and practice of refusing to provide NL Plaintiffs with pay slips or earnings statements with their paychecks showing the name of the employer and employee, the day, month, year, number of hours worked, hourly rate, and the amounts of deductions or increases made for the pay period.

68.     During the relevant time period, Defendants followed a policy and practice of paying NL Plaintiffs on a weekly basis, with the workweek ending on Saturday.  However, Defendants followed a policy and practice of regularly failing to pay NL Plaintiffs for their work until approximately thirteen or fourteen days after the end of the workweek.  Sometimes National Lumber did not prepare the timesheet invoices until more than six days after the end of the workweek.  And, on numerous occasions, Defendants followed a practice of forcing NL Plaintiffs to wait even longer to receive a paycheck for their work because Defendants either provided no paycheck after two weeks or the paycheck that they provided bounced due to insufficient funds.  After a paycheck bounced, Defendants failed to provide replacement paychecks to NL Plaintiffs for several more days or weeks, forcing the NL Plaintiffs to wait even

longer for their wages.

69.     On one or more occasions after their paychecks bounced, NL Plaintiffs, including the Named Plaintiffs, complained to a NL Supervisor about not getting paid.

70.     During the relevant time period, Defendants paid NL Plaintiffs on an hourly basis. On information and belief, the hourly rates ranged from approximately $14 to $20 ("Straight-Time Rate").

71.     During the relevant time period, Defendants followed a policy and practice of paying NL Plaintiffs only their Straight-Time Rate for time they worked over 40 hours in a workweek.

72.     During the relevant time period, Defendants followed a policy and practice of not paying NL Plaintiffs for any time they did not work.

73.     On one or more occasions, some or all of the Named Plaintiffs and other NL Plaintiffs, complained to an NL Supervisor that they were not getting paid any overtime premiums.

74.     On information and belief, Defendants followed a policy and practice of paying NL Plaintiffs on a quarter-hour or half-hour basis.  However, for purposes of calculating wages, Defendants followed a policy and practice of rounding the time NL Plaintiffs worked down more often and more significantly than they rounded up.  Defendants followed a policy and practice of frequently rounding down more than 8 minutes, sometimes significantly.   The time NL Plaintiffs worked without being paid often involved time worked over 40 hours in a workweek.

75.     In addition, Plaintiff Pinto was also not paid for work he performed driving to and from Weder Pereira's house (the principal office of Excel) in Norton, Massachusetts to pick up the NL Plaintiffs' paychecks and deliver them to the New Bedford Lumber Yard almost every

week.  Such work typically added three hours, some or all of which involved overtime hours, to Plaintiff Pinto's workweek, but he was not compensated for this work at all.

76.     Defendants followed a policy and practice of failing to pay NL Plaintiffs voluntarily leaving their employment all wages due to them within six or seven days of their last day of work and failing to pay terminated NL Plaintiffs all wages due to them on the day of termination.

77.     On information and belief, Defendants followed a policy and practice of failing to ever pay many NL Plaintiffs wages due to them for their last week or two of work.

78.     At no time after July 1, 2015 (or prior thereto) did Defendants notify NL Plaintiffs that they had the right to earn and use paid sick leave; Defendants failed to give NL Plaintiffs a copy of a notice of a policy regarding sick leave or to include a sick time policy in a handbook manual provided to NL Plaintiffs.

79.     During the relevant time period, including after July 1, 2015, Defendants followed a policy and practice of refusing to allow NL Plaintiffs to earn and use paid sick leave.

80.     NL Supervisors even threatened to terminate NL Plaintiffs who requested to leave early due to illness or injury.

**F.      Pereira-Entity Defendants Willfully Failed to Pay Jobsite Plaintiffs Overtime Wages, Timely Wages, Wages for all Time Worked, and Earned Sick Time**

81.     During the relevant time period, the Pereira-Entity Defendants sent Jobsite Plaintiffs, including the Named Plaintiffs, to perform construction laborer and carpentry work at jobsites, primarily in Massachusetts.

82.     Pereira-Entity Defendants instructed the Jobsite Plaintiffs to work at the construction jobsites for several weeks, months, or even years, depending on the size and needs of the projects at the various jobsites.

83.     During the relevant time period, Pereira-Entity Defendants applied the same wage policies and practices to all Plaintiffs, regardless of where they worked, and followed the same wage policies and practices for the Jobsite Plaintiffs as they followed with the NL Plaintiffs.

84.     During the relevant time period, Pereira-Entity Defendants followed a policy and practice of requiring Jobsite Plaintiffs to work more than 40 hours in a workweek, and many Jobsite Plaintiffs, including the Named Plaintiffs, worked up to fifty, sixty, and even seventy hours in many workweeks.

85.     During the relevant time period, Pereira-Entity Defendants followed a policy and practice of paying Jobsite Plaintiffs on an hourly basis, but failing to pay Jobsite Plaintiffs premium pay for any time they worked over 40 hours in a workweek.

86.     During the relevant time period, Pereira-Entity Defendants followed a policy and practice of failing to provide Jobsite Plaintiffs with any earnings statements or pay slips showing the name of the employer and employee, the day, month, year, number of hours worked, hourly rate, and the amounts of deductions or increases made for the pay period.

87.     During the relevant time period, Pereira-Entity Defendants generally paid Jobsite Plaintiffs on a weekly basis, with the week ending on Saturday.

88.     During the relevant time period, Pereira-Entity Defendants followed a policy and practice of consistently failing to pay Jobsite Plaintiffs within six or seven days after the end of the workweek.  Pereira-Entity Defendants followed a policy and practice of regularly failing to pay Jobsite Plaintiffs for their work until approximately thirteen or fourteen days after the end of the workweek in which they performed the work.  Numerous times, Pereira-Entity Defendants paid the Jobsite Plaintiffs with checks that bounced, forcing the Jobsite Plaintiffs to wait even longer for their wages.

89.    On information and belief, Pereira-Entity Defendants followed a policy and practice of paying NL Plaintiffs on a quarter-hour or half-hour basis.  However, for purposes of calculating wages, Pereira-Entity Defendants followed a policy and practice of rounding the time Jobsite Plaintiffs worked down more often and in greater amounts than they rounded up. Pereira-Entity Defendants followed a policy and practice of frequently rounding down more than 8 minutes, sometimes significantly.  The time Jobsite Plaintiffs worked without pay often involved time worked over 40 hours in a workweek.

90.    Pereira-Entity Defendants followed a policy and practice of failing to pay Jobsite Plaintiffs voluntarily leaving their employment all wages due to them within six or seven days of their last day of work and failing to pay terminated Jobsite Plaintiffs all wages due to them on the day of termination

91.    On information and belief, Pereira-Entity Defendants also followed a policy and practice of failing to pay many Jobsite Plaintiffs wages for their last one or two weeks of work.

92.    At no time after July 1, 2015, (or prior thereto) did Pereira-Entity Defendants notify Jobsite Plaintiffs that they had the right to earn and use paid sick leave; Pereira-Entity Defendants failed to give Jobsite Plaintiffs a copy of a notice of a policy regarding sick leave or to include a sick time policy in a handbook manual provided to Jobsite Plaintiffs.

93.    During the relevant time period, including after July 1, 2015, Pereira-Entity Defendants followed a policy and practice of refusing to allow Jobsite Plaintiffs to earn and use paid sick leave.

**G.    Wage Complaints Filed with Massachusetts Attorney General**

94.    On or about March 9, 2017, Plaintiff Rodrigues filed the AG Complaint with the AG on behalf of himself and similarly-situated employees complaining about the unlawful wage

practices of Weder Pereira, WCP, Rondon Siding, and National Lumber, including failure to pay overtime premiums, nonpayment of wages for all hours worked, late payments, and cash payments/failure to withhold taxes.

**H.     Retaliation for Complaining about Unlawful Wage Practices and New Wage Complaints Filed with AG**

95.     After the AG Complaint was filed, the AG began an investigation of the wage practices of the Pereira-Entity Defendants and National Lumber in connection with the work of the NL Plaintiffs and the Jobsite Plaintiffs.

96.     On information and belief, representatives from the AG's office held a meeting with certain Defendants and their attorneys (the "AG Meeting").

97.     Soon after the AG Meeting, National Lumber began terminating NL Plaintiffs that were still working at the New Bedford Lumber Yard.

98.     An NL Supervisor complained to Plaintiff Pinto about Plaintiff Rodrigues filing the AG Complaint and stated something to the effect that many people were losing their jobs all because one person had to go and complain.

99.     Defendant Weder Pereira made similar allegations to Plaintiff Pinto, complaining about Plaintiff Rodrigues and the problems he had caused by filing the AG Complaint.

100.     Within a short timeframe after the AG Meeting, National Lumber terminated all NL Plaintiffs, including the Named Plaintiffs.

101.     On information and belief, the terminations did not follow any slowdown in the amount of work available for NL Plaintiffs at the New Bedford Lumber Yard.

102.     On information and belief, National Lumber continued to hire and employ other employees to replace NL Plaintiffs to construct wall panels after it terminated all NL Plaintiffs.

17

103.    NL Plaintiffs terminated after the AG Meeting were performing their work adequately at the time of their terminations.

**I.      Additional Complaints Filed with Massachusetts Attorney General**

104.    In early 2018, Plaintiff Pinto filed a Complaint with the AG on behalf of himself and similarly-situated employees in 2018 regarding the unlawful wage practices of Weder Pereira and WCP and National Lumber.

105.    On March 1, 2019, Plaintiffs Rodrigues and Pinto filed new Complaints with the AG, on behalf of themselves and similarly-situated employees, against all Defendants, for violations of the Massachusetts Paid Sick Leave Law and for unlawful termination in retaliation for the earlier filing of a wage complaint with the AG's office.

**J.      Request Right to Sue Letter**

106.    More than 90 days have passed since Plaintiff Rodrigues filed the AG Complaint.

107.    The AG investigated the matter but did not reach a final resolution of the matter.

108.    On February 28, 2019, the AG issued Plaintiff Rodrigues a Right to Sue Letter with respect to the AG Complaint.

109.    On March 5, 2019, the AG issued Plaintiffs Rodrigues and Pinto Right to Sue Letters with respect to the complaints they filed on March 1, 2019.

**K.      Plaintiffs Not Paid To Date**

110.    To date, Defendants have still not paid Plaintiffs Overtime Premium Pay for time worked over 40 hours in a workweek, wages for all time worked, or earned sick time.

## CLASS ACTION REPRESENTATION ALLEGATIONS

**A.     Plaintiffs Working for National Lumber at the New Bedford Lumber Yard**

111.    Named Plaintiffs Rodrigues, Pinto, Dasilva, Sousa, Pereira-Martins, and Martins-Rodrigue ("NL Class Representative Plaintiffs") bring this Class Action claim pursuant to Fed. R. Civ. P. 23 and M.G.L. c. 149 & 151 on behalf of themselves and all similarly-situated employees who worked for Defendants at the New Bedford Lumber Yard as hourly paid employees building wall panels anytime from March 14, 2014 (three years, less five days, prior to the date the AG Complaint was filed) through the present (the "NL Class Plaintiffs").  The NL Class Plaintiffs were not paid all overtime and other wages due under Massachusetts state law for their work because they worked more than 40 hours in one or more workweeks without receiving overtime premium pay, were paid weekly wages and/or final wages later than required by M.G.L. c. 149, § 148, were not paid all wages due as a result of improper rounding and/or Defendants' failure to pay wages due for their final week(s) of work, and/or were not provided the opportunity to accrue and use earned paid sick time after July 1, 2015.

112.    The group of NL Class Plaintiffs identified herein, which, on information and belief, includes more than 40 individuals, is so numerous that joinder of all NL Class Plaintiffs is impracticable.

113.    There are common questions of law and fact related to NL Class Plaintiffs' claims, including the policies and practices of paying NL Class Plaintiffs straight time for overtime hours, making late wage payments, improperly rounding time worked for purposes of calculating wages, and refusing to provide earned paid sick time.  In addition, legal and factual questions regarding finding that Defendants acted as a single enterprise and/or joint employers are common to all NL Class Plaintiffs.

114.    The claims of the NL Representative Plaintiffs, including claims related to overtime pay, late pay, non-payment of wages, and failure to provide earned paid sick time, are typical of the claims of the NL Class Plaintiffs.  Although the NL Class Plaintiffs had varying hourly rates and worked different hours or weeks, they were all subjected to similar work conditions and compensation policies, which are at the heart of this matter.

115.    The NL Representative Plaintiffs will fairly and adequately represent and protect the interests of the members of the class. Their claims for unpaid overtime and other unpaid wages are typical of the claims held by the rest of the NL Class Plaintiffs, and they predominate over any issues raised by any additional individual claims they have.  They have no known conflicts with any members of the NL Class Plaintiffs.

116.    The NL Representative Plaintiffs have retained counsel competent and experienced in complex class action and wage and hour litigation who will vigorously pursue this action for the benefit of all NL Class Plaintiffs.

117.    Class certification is appropriate because the questions of law and fact common to the NL Class Plaintiffs predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

118.    The damages of many NL Class Plaintiffs may be so small as to make the expense and burden of individual litigation impractical and redress of class members' harm impossible.

119.    This Court will have no difficulty managing this as a class action.

120.    The NL Representative Plaintiffs are aware of no difficulty that will be encountered in the management of this litigation that would preclude its approval as a class action.

**B.      Plaintiffs Working for Pereira-Entity Defendants at Any Jobsite**

121.    Named Plaintiffs Rodrigues, Pinto, Dasilva, Sousa, Pereira-Martins, and Martins-

Rodrigue,  ("Jobsite Class Representative Plaintiffs"), bring this Class Action claim pursuant to

Fed. R. Civ. P. 23 and G.L. c. 149 & 151 on behalf of themselves and all similarly-situated

employees who worked for the Pereira-Entity Defendants any jobsite as hourly-paid construction

employees anytime from March 14, 2014 (three years, less five days, prior to the date the AG

Complaint was filed) through the present (the "Jobsite Class Plaintiffs").  The Jobsite Class

Plaintiffs were not paid all overtime and other wages due under Massachusetts state law for their

work because they worked more than 40 hours in one or more workweeks without receiving

overtime pay, were paid weekly wages and/or final wages later than required by M.G.L. c. 149,

§ 148, were not paid all wages due to improper rounding and/or Defendants' failure to pay for

their final week(s) of work, and/or were not provided the opportunity to accrue and use earned

paid sick time after July 1, 2015.

122.    The group of Jobsite Class Plaintiffs identified herein, which, on information and

belief, includes more than 40 individuals, is so numerous that joinder of all Jobsite Class

Plaintiffs is impracticable.

123.    There are common questions of law and fact related to Jobsite Class Plaintiffs'

claims, including the policies and practices of paying all Jobsite Class Plaintiffs straight time for

overtime hours, making late wage payments, failing to pay all wages due, and refusing to provide

earned paid sick time.

124.    The claims of the Jobsite Representative Plaintiffs, including claims related to

overtime pay, late pay, non-payment of wages, and failure to provide earned paid sick time, are

typical of the claims of the Jobsite Class Plaintiffs.  Although the Jobsite Class Plaintiffs had

varying hourly rates and worked different hours or weeks, they were all subjected to similar compensation policies, which are at the heart of this matter.

125.    The Jobsite Representative Plaintiffs will fairly and adequately represent and protect the interests of the members of the class.  Their claims for unpaid overtime and other unpaid wages are typical of the claims held by the rest of the Jobsite Class Plaintiffs, and the claims consistent with the Jobsite Class Plaintiffs predominate over any issues raised by individual claims, if any, they have. They have no known conflicts with any members of the Jobsite Class Plaintiffs.

126.    The Jobsite Representative Plaintiffs have retained counsel competent and experienced in complex class action and wage and hour litigation who will vigorously pursue this action for the benefit of all Jobsite Class Plaintiffs.

127.    Class certification is appropriate because the questions of law and fact common to the Jobsite Class Members predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

128.    The damages of many Jobsite Class Plaintiffs may be so small as to make the expense and burden of individual litigation impractical and redress of class members' harm impossible.

129.    This Court will have no difficulty managing this as a class action.

130.    The Jobsite Representative Plaintiffs are aware of no difficulty that will be encountered in the management of this litigation that would preclude its approval as a class action.

## COLLECTIVE ACTION REPRESENTATION ALLEGATIONS

131.    Named Plaintiffs Rodrigues, Pinto, Dasilva, Sousa, Pereira-Martins, and Martins-Rodrigue ("NL Collective Representative Plaintiffs"), bring this Collective Action claim pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all similarly-situated employees who worked for the Defendants at the New Bedford Lumber Yard as hourly-paid employees building wall panels anytime during the period starting three years prior to the filing of this Complaint through the present (the "NL Collective Plaintiffs").  The NL Collective Plaintiffs were not paid all overtime and/or minimum wages due under the FLSA for their work because they worked more than 40 hours in one or more workweeks without receiving overtime premium pay for all time worked over 40 hours and/or did not receive at least minimum wages for their work because they were not paid within a reasonable time after the end of the workweek in which they earned such wages.

132.    Named Plaintiffs Rodrigues, Pinto, Dasilva, Sousa, Pereira-Martins, and Martins-Rodrigue ("Jobsite Collective Representative Plaintiffs"), bring this Collective Action claim pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all similarly-situated employees who worked for the Pereira-Entity Defendants at any jobsite as hourly-paid construction employees during the period starting three years prior to the filing of this Complaint through the present (the "Jobsite Collective Plaintiffs").  The Jobsite Collective Plaintiffs were not paid all overtime and/or minimum wages due under the FLSA for their work because they worked more than 40 hours in one or more workweeks without receiving overtime premium pay for all time worked over 40 hours and/or they did not receive at least minimum wages for their work because they did not receive wages within a reasonable time after the end of the workweek in which they earned such wages.

**CLAIMS FOR RELIEF**

**COUNT I**
**FAILURE TO PAY OVERTIME**
**FAIR LABOR STANDARDS ACT, 29 U.S.C § 201 *et seq.***
**(On Behalf of Plaintiffs Rodrigues, Pinto, Dasilva, Sousa, Pereira-Martins,**
**and Martins-Rodrigue and Similarly-Situated NL Collective Plaintiffs)**
**(Against All Defendants)**

133.    Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

134.    This claim is brought on behalf of the NL Collective Plaintiffs, including the NL Collective Representative Plaintiffs.

135.    This claim is brought against all Defendants.

136.    On information and belief, during the relevant period of time, each of WCP, Rondon Siding, Excel, National Lumber Company, and Reliable Truss, either individually or acting in concert, was an enterprise engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 201 *et seq.*

137.    During the relevant time period, each NL Collective Plaintiff was engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 201 *et seq.*

138.    During the relevant time period, Defendants constituted a single enterprise and/or joint employers of the NL Collective Plaintiffs within the meaning of 29 U.S.C. § 201 *et seq.*

139.    During the relevant time period, each Defendant suffered or permitted NL Collective Plaintiffs to work at the New Bedford Lumber Yard.

140.    During the relevant time period, each Defendant acted directly or indirectly in the interest of the NL Collective Plaintiffs' employer or employers under the FLSA and were the NL Collective Plaintiffs' employer, as defined by 29 U.S.C. § 201 *et seq.*

141.    Pursuant to the FLSA, 29 U.S.C. § 207(a), Defendants were required to pay NL Collective Plaintiffs one and a half times the regular rate at which they were employed for all time they worked over 40 hours in a workweek ("Overtime Premium Pay").

142.    During the relevant time period, Defendants regularly followed a policy and practice of refusing to pay NL Collective Plaintiffs Overtime Premium Pay.

143.    Defendants' failure to pay NL Collective Plaintiffs Overtime Premium Pay violates the FLSA.

144.    Defendants acted willfully or with reckless disregard as to their obligation to pay NL Collective Plaintiffs Overtime Premium Pay, and accordingly, the violation was willful for purposes of the FLSA, 29 U.S.C. §§ 255(a) and 260.

145.    Defendants are jointly and severally liable to NL Collective Plaintiffs under the FLSA for their failure to pay Overtime Premium Pay to NL Collective Plaintiffs in an amount equal to such unpaid Overtime Premium Pay.

146.    Defendants are also jointly and severally liable to NL Collective Plaintiffs for liquidated damages on unpaid Overtime Premium Pay, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

## COUNT II
## FAILURE TO PAY MINIMUM WAGE
## FAIR LABOR STANDARDS ACT, 29 U.S.C § 201 *et seq.*
### (On Behalf of Plaintiffs Rodrigues, Pinto, Dasilva, Sousa, Pereira-Martins, and Martins-Rodrigue and Similarly-Situated NL Collective Plaintiffs)
### (Against All Defendants)

147.    Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

148.     This claim is brought on behalf of NL Collective Plaintiffs, including the NL

Collective Representative Plaintiffs.

149.     This claim is brought against all Defendants.

150.     Under Massachusetts law, M.G.L. c. 148 § 149, employers are required to pay

hourly-paid workers who work five to six days a week within six days after the termination of

the pay period in which the wages were earned and to pay hourly-paid workers who work fewer

than five days a week within seven days after the termination of the pay period.

151.     Pursuant to the FLSA, Defendants were required to pay NL Collective Plaintiffs

at least the minimum wage required by the FLSA (the "Federal Minimum Wage") for all time

that they worked for Defendants each workweek.

152.     Defendants were required to pay NL Collective Plaintiffs at least the Federal

Minimum Wage for all time that they worked for Defendants in a timely manner; the failure to

do so in any week amounted to a non-payment of such wages for that week.

153.     During the relevant time period, Defendants regularly paid NL Collective

Plaintiffs more than six or seven days after the termination of the pay period within which they

earned wages.

154.     During the relevant time period, on information and belief, Defendants frequently

paid NL Collective Plaintiffs thirteen or fourteen days after the end of the pay period within

which they earned wages.

155.     During the relevant time period, Defendants sometimes paid NL Collective

Plaintiffs more than two weeks after the end of the pay period within which they earned wages.

156.    Defendants willfully and repeatedly violated the provisions of the FLSA by failing to timely pay the NL Collective Plaintiffs at least the Federal Minimum Wage for all time they worked for Defendants each workweek.

157.    Defendants are jointly and severally liable to NL Collective Plaintiffs under the FLSA for their failure to timely pay at least Federal Minimum Wage for all time that NL Collective Plaintiffs worked.

158.    Defendants are also jointly and severally liable to NL Collective Plaintiffs for liquidated damages on the payments that Defendants failed to pay in a timely manner, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

<u>**COUNT III**</u>
**FAILURE TO PAY OVERTIME**
**M.G.L. c. 151**
**(On Behalf of Plaintiffs Rodrigues, Pinto, Dasilva, Sousa, Pereira-Martins,**
**and Martins-Rodrigue and Similarly-Situated NL Class Plaintiffs)**
**(Against All Defendants)**

159.    Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

160.    This claim is brought on behalf of the NL Class Plaintiffs, including the NL Class Representative Plaintiffs.

161.    This claim is brought against all Defendants.

162.    During the relevant time period, Defendants were "employers" of NL Class Plaintiffs within the meaning of M.G.L. c. 151.

163.    During the relevant time period, Defendants constituted a single employer and/or joint employers of NL Class Plaintiffs within the meaning of M.G.L. c. 151.

164.    During the relevant time period, NL Class Plaintiffs were "employees" of Defendants within the meaning of M.G.L. c. 151.

165.    During time relevant hereto, Defendants employed NL Class Plaintiffs within the meaning of M.G.L. c. 151.

166.    Under M.G.L. c. 151, § 1A, Defendants were required to pay NL Class Plaintiffs Overtime Premium Pay for all time worked over 40 hours in a workweek.

167.    While employed by Defendants during the relevant time period, NL Class Plaintiffs worked in excess of 40 hours per workweek.

168.    Defendants followed a policy and practice of failing to pay NL Class Plaintiffs Overtime Premium Pay for all time they worked over 40 hours per workweek during time relevant hereto, in violation of M.G.L. c. 151, § 1A.

169.    Defendants are jointly and severally liable to NL Class Plaintiffs under M.G.L. c. 151 for their failure to pay Overtime Premium Pay to NL Class Plaintiffs in an amount equal to such unpaid Overtime Premium Pay.

170.    Defendants are also jointly and severally liable to NL Class Plaintiffs under M.G.L. c. 151 for liquidated treble damages on unpaid Overtime Premium Pay, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

<u>**COUNT IV**</u>
**VIOLATION OF MASSACHUSETTS PAYMENT OF WAGES ACT**
**M.G.L. c. 149, §§ 148 & 150**
**(On Behalf of Plaintiffs Rodrigues, Pinto, Dasilva, Sousa, Pereira-Martins,**
**and Martins-Rodrigue and Similarly-Situated NL Class Plaintiffs)**
**(Against All Defendants)**

171.    Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

172.    This claim is brought on behalf of the NL Class Plaintiffs, including the NL Class Representative Plaintiffs.

173.    This claim is brought against all Defendants.

174.    During the relevant time period, Defendants were "employers" of NL Class Plaintiffs within the meaning of M.G.L. c. 149.

175.    During the relevant time period, Defendants constituted a single employer and/or joint employers of NL Class Plaintiffs within the meaning of M.G.L. c. 149.

176.    During the relevant time period, NL Class Plaintiffs were "employees" of Defendants within the meaning of M.G.L. c. 149.

177.    During time relevant hereto, Defendants employed NL Class Plaintiffs within the meaning of M.G.L. c. 149.

178.    Under M.G.L. c. 149, § 148, Defendants were required to pay NL Class Plaintiffs all wages due within six or seven days after the termination of the pay period in which such wages were earned.

179.    Under M.G.L. c. 149, § 148, Defendants were required to pay NL Class Plaintiffs voluntarily leaving their employment all wages due in full on the following regular pay day, or, in the absence of a regular pay day, on the Saturday following their last day of employment.

180.    Under M.G.L. c. 149, § 148, Defendants were required to pay NL Class Plaintiffs discharged from employment all wages due in full on the day of their discharge.

181.    During the relevant time period, Defendants regularly followed a policy and practice of failing to pay NL Class Plaintiffs within six or seven days after the termination of the pay period in which such wages were earned, in violation of M.G.L. c. 149, § 148.

182.     During the relevant time period, Defendants followed a policy and practice of improperly rounding down the time NL Class Plaintiffs worked for purposes of calculating the wages due and thus followed a policy and practice of failing to pay NL Class Plaintiffs the full amount of their wages due, in violation of M.G.L. c. 149, § 148 and the AG regulations promulgated thereunder.

183.     During the relevant time period, Defendants regularly followed a policy and practice of failing to pay NL Class Plaintiffs voluntarily leaving employment the full amount of wages due on the next required regular pay day or on the following Saturday, in violation of M.G.L. c. 149, § 148.

184.     During the relevant time period, Defendants regularly followed a policy and practice of failing to pay discharged NL Class Plaintiffs the full amount of wages due on the day of discharge, in violation of M.G.L. c. 149, § 148.

185.     Defendants are jointly and severally liable to NL Class Plaintiffs under M.G.L. c. 149, §§ 148 & 150 for their failure to pay NL Class Plaintiffs all wages due within the legally-required time frames.

186.     Defendants are jointly and severally liable to NL Class Plaintiffs under M.G.L. c. 149, §§ 148 & 150 for their failure to pay NL Class Plaintiffs all wages due for all time worked.

187.     Defendants are also jointly and severally liable to NL Class Plaintiffs under M.G.L. c. 149, §§ 148 & 150 for liquidated treble damages on the amounts due as a result of Defendants' failure to timely pay wages and failure to pay all wages due for time worked, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

<u>COUNT V</u>
**VIOLATION OF MASSACHUSETTS EARNED SICK TIME LAW**
**M.G.L. c. 149, §§ 148C & 150**
**(On Behalf of Plaintiffs Rodrigues, Pinto, Dasilva, Sousa, Pereira-Martins,**
**and Martins-Rodrigue and Similarly-Situated NL Class Plaintiffs)**
**(Against All Defendants)**

188.    Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

189.    This claim is brought on behalf of the NL Class Plaintiffs, including the NL Class Representative Plaintiffs.

190.    This claim is brought against all Defendants.

191.    During the relevant time period on or after July 1, 2015, Defendants were "employers" of NL Class Plaintiffs within the meaning of M.G.L. c. 149, § 148C and the regulations promulgated by the AG pursuant thereto.

192.    During the relevant time period on or after July 1, 2015, Defendants constituted a single employer and/or joint employers of NL Class Plaintiffs within the meaning of M.G.L. c. 149, § 148C and the regulations promulgated by the AG pursuant thereto.

193.    During the relevant time period on or after July 1, 2015, Defendants were "employers of eleven or more employees" within the meaning of M.G.L. c. 149, § 148C and the regulations promulgated by the AG pursuant thereto.

194.    During the relevant time period on or after July 1, 2015, NL Class Plaintiffs were "employees" of Defendants within the meaning of M.G.L. c. 149, § 148C and the regulations promulgated by the AG pursuant thereto.

195.    During time relevant hereto on or after July 1, 2015, Defendants employed NL Class Plaintiffs within the meaning of M.G.L. c. 149, § 148C and the regulations promulgated by

the AG pursuant thereto.

196.    Under M.G.L. c. 149, § 148C and the regulations promulgated by the AG
pursuant thereto, starting on July 1, 2015, Defendants were required to provide a hard or
electronic copy of a notice of the M.G.L. c. 149, § 148C prepared by the AG to NL Class
Plaintiffs or include such notice in an employee manual or handbook provided to NL Class
Plaintiffs.

197.    During time relevant hereto on or after July 1, 2015, Defendants followed a policy
and practice of failing to either provide the NL Class Plaintiffs employed after July 1, 2015 the
required hard or electronic copy of a notice of the M.G.L. c. 149, § 148C prepared by the AG or
include such notice in an employee manual or handbook provided to NL Class Plaintiffs.

198.    During time relevant hereto on or after July 1, 2015, Defendants followed a policy
and practice of failing to allow NL Class Plaintiffs to accrue and use earned sick time for their
work at the New Bedford Lumber Yard, in violation of M.G.L. c. 149, § 148C.

199.    During time relevant hereto on or after July 1, 2015, Defendants followed a policy
and practice of failing to pay NL Class Plaintiffs for time off taken in accordance with the
provisions of M.G.L. c. 149, § 148C and the regulations promulgated by the AG thereunder for
which the NL Class Plaintiffs would have had earned sick time had Defendants complied with
the law, in violation of M.G.L. c. 149, § 148C.

200.    Defendants are jointly and severally liable to NL Class Plaintiffs under M.G.L. c.
149, §§ 148C & 150 for their failure to properly notify NL Class Plaintiffs of their rights to earn
and use paid sick leave, failure to allow NL Class Plaintiffs to earn and use paid sick leave, and
failure to pay NL Class Plaintiffs for leave they took that would have qualified for paid sick
leave had Defendants complied with the law.

201.    Defendants are also jointly and severally liable to NL Class Plaintiffs under

M.G.L. c. 149, §§ 148C & 150 for liquidated treble damages on the amounts due as a result of

Defendants' failure to comply with M.G.L. c. 149, §§ 148C and the regulations promulgated by

the AG thereunder, as well as attorneys' fees, costs, interest, and all other relief deemed just and

proper.

**COUNT VI**
**FAILURE TO PAY OVERTIME**
**FAIR LABOR STANDARDS ACT, 29 U.S.C § 201 et seq.**
**(On Behalf of Plaintiffs Rodrigues, Pinto, Dasilva, Sousa, Pereira-Martins,**
**and Martins-Rodrigue and Similarly-Situated Jobsite Collective Plaintiffs)**
**(Against All Pereira-Entity Defendants)**

202.    Plaintiffs repeat and incorporate by reference all allegations above and below as if

fully set forth here.

203.    This claim is brought on behalf of the Jobsite Collective Plaintiffs, including the

Jobsite Collective Representative Plaintiffs.

204.    This claim is brought against all Pereira-Entity Defendants.

205.    On information and belief, during the relevant time period, each of WCP, Rondon

Siding, Excel, either individually or acting in concert, was an enterprise engaged in commerce or

in the production of goods for commerce, as defined by 29 U.S.C. § 201 *et seq*.

206.    During the relevant time period, each Jobsite Collective Plaintiff was engaged in

commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 201 *et seq*.

207.    During the relevant time period, the Pereira-Entity Defendants constituted a single

enterprise and/or joint employers of the Jobsite Collective Plaintiffs within the meaning of 29

U.S.C. § 201 *et seq*.

208.     During the relevant time period, each Pereira-Entity Defendant suffered or permitted Jobsite Collective Plaintiffs to work on their behalf at jobsites primarily in Massachusetts.

209.     During the relevant time period, each Pereira-Entity Defendant acted directly or indirectly in the interest of the Jobsite Collective Plaintiffs' employer or employers under the FLSA and were the Jobsite Collective Plaintiffs' employer, as defined by 29 U.S.C. § 201 *et seq.*

210.     Pursuant to the FLSA, 29 U.S.C. § 207(a), Pereira-Entity Defendants were required to pay Jobsite Collective Plaintiffs Overtime Premium Pay for all time they worked over 40 hours in a workweek.

211.     During the relevant time period, Pereira-Entity Defendants regularly followed a policy and practice of failing to pay Jobsite Collective Plaintiffs Overtime Premium Pay.

212.     Pereira-Entity Defendants' failure to pay Jobsite Collective Plaintiffs Overtime Premium Pay during the relevant time period violates the FLSA.

213.     Pereira-Entity Defendants acted willfully or with reckless disregard as to their obligation to pay Jobsite Collective Plaintiffs Overtime Premium Pay, and accordingly, the violation was willful for purposes of the FLSA, 29 U.S.C. §§ 255(a) and 260.

214.     Pereira-Entity Defendants are jointly and severally liable to Jobsite Collective Plaintiffs under the FLSA for their failure to pay Overtime Premium Pay to Jobsite Collective Plaintiffs in an amount equal to such unpaid Overtime Premium Pay.

215.     Pereira-Entity Defendants are also jointly and severally liable to Jobsite Collective Plaintiffs for liquidated damages on unpaid Overtime Premium Pay, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

<u>COUNT VII</u>
**FAILURE TO PAY MINIMUM WAGE**
**FAIR LABOR STANDARDS ACT, 29 U.S.C § 201 et seq.**
**(On Behalf of Plaintiffs Rodrigues, Pinto, Dasilva, Sousa, Pereira-Martins,**
**and Martins-Rodrigue and Similarly-Situated Jobsite Collective Plaintiffs)**
**(Against All Pereira-Entity Defendants)**

216.    Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

217.    This claim is brought on behalf of the Jobsite Collective Members, including the Jobsite Collective Representative Plaintiffs.

218.    This claim is brought against all Pereira-Entity Defendants.

219.    Under Massachusetts law, M.G.L. c. 148 § 149, employers are required to pay hourly-paid workers who work five to six days a week within six days after the termination of the pay period in which the wages were earned and to pay hourly-paid workers who work fewer than five days a week within seven days after the termination of the pay period.

220.    Pursuant to the FLSA, Pereira-Entity Defendants were required to pay Jobsite Collective Plaintiffs at least the Federal Minimum Wage for all time that they worked for Pereira-Entity Defendants each workweek.

221.    Pereira-Entity Defendants were required to pay Jobsite Collective Plaintiffs at least the Federal Minimum Wage for all time that they worked for Pereira-Entity Defendants in a timely manner; the failure to do so in any week amounted to a non-payment of such wages for that week.

222.    During the relevant time period, Pereira-Entity Defendants regularly paid Jobsite Collective Plaintiffs more than six or seven days after the termination of the pay period within which they earned wages.

223.    During the relevant time period, on information and belief, Pereira-Entity Defendants often paid Jobsite Collective Plaintiffs thirteen or fourteen days after the end of the pay period within which they earned wages.

224.    During the relevant time period, Pereira-Entity Defendants sometimes paid Jobsite Collective Plaintiffs more than two weeks after the end of the pay period within which they earned wages.

225.    Pereira-Entity Defendants willfully and repeatedly violated the provisions of the FLSA by failing to timely pay the Jobsite Collective Plaintiffs at least the Federal Minimum Wage for all time they worked for Defendants each workweek.

226.    Pereira-Entity Defendants are jointly and severally liable to Jobsite Collective Plaintiffs under the FLSA for their failure to timely pay at least Federal Minimum Wage for all time that Jobsite Collective Plaintiffs worked.

227.    Pereira-Entity Defendants are also jointly and severally liable to Jobsite Collective Plaintiffs for liquidated damages on the payments that Pereira-Entity Defendants failed to pay in a timely manner, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

<u>COUNT VIII</u>
**FAILURE TO PAY OVERTIME**
**M.G.L. c. 151**
**(On Behalf of Plaintiffs Rodrigues, Pinto, Dasilva, Sousa, Pereira-Martins,**
**and Martins-Rodrigue and Similarly-Situated Jobsite Class Plaintiffs)**
**(Against All Pereira-Entity Defendants)**

228.    Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

229.    This claim is brought on behalf of the Jobsite Class Plaintiffs, including the Jobsite Class Representative Plaintiffs.

230.    This claim is brought against all Pereira-Entity Defendants.

231.    During the relevant time period, Pereira-Entity Defendants were "employers" of Jobsite Class Plaintiffs within the meaning of M.G.L. c. 151.

232.    During the relevant time period, Pereira-Entity Defendants constituted a single employer and/or joint employers of Jobsite Class Plaintiffs within the meaning of M.G.L. c. 151.

233.    During the relevant time period, Jobsite Class Plaintiffs were "employees" of Pereira-Entity Defendants within the meaning of M.G.L. c. 151.

234.    During time relevant hereto, Pereira-Entity Defendants employed Jobsite Class Plaintiffs within the meaning of M.G.L. c. 151.

235.    Under M.G.L. c. 151, § 1A, Pereira-Entity Defendants were required to pay Jobsite Class Plaintiffs Overtime Premium Pay for all time worked over 40 hours in a workweek.

236.    While employed by Pereira-Entity Defendants during the relevant time period, Jobsite Class Plaintiffs worked in excess of 40 hours per workweek.

237.    Pereira-Entity Defendants followed a policy and practice of failing to pay Jobsite Class Plaintiffs Overtime Premium Pay for all time they worked over 40 hours per workweek during time relevant hereto, in violation of M.G.L. c. 151, § 1A.

238.    Pereira-Entity Defendants are jointly and severally liable to Jobsite Class Plaintiffs under M.G.L. c. 151 for their failure to pay Overtime Premium Pay to Jobsite Class Plaintiffs in an amount equal to such unpaid Overtime Premium Pay.

239.     Pereira-Entity Defendants are also jointly and severally liable to Jobsite Class

Plaintiffs under M.G.L. c. 151 for liquidated treble damages on unpaid Overtime Premium Pay,

as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

<u>COUNT IX</u>
**VIOLATION OF MASSACHUSETTS PAYMENT OF WAGES ACT**
**M.G.L. c. 149, §§ 148 & 150**
**(On Behalf of Plaintiffs Rodrigues, Pinto, Dasilva, Sousa, Pereira-Martins,**
**and Martins-Rodrigue and Similarly-Situated Jobsite Class Plaintiffs)**
**(Against All Pereira-Entity Defendants)**

240.     Plaintiffs repeat and incorporate by reference all allegations above and below as if

fully set forth here.

241.     This claim is brought on behalf of the Jobsite Class Plaintiffs, including the

Jobsite Class Representative Plaintiffs.

242.     This claim is brought against all Pereira-Entity Defendants.

243.     During the relevant time period, Pereira-Entity Defendants were "employers" of

Jobsite Class Plaintiffs within the meaning of M.G.L. c. 149.

244.     During the relevant time period, Pereira-Entity Defendants constituted a single

employer and/or joint employers of Jobsite Class Plaintiffs within the meaning of M.G.L. c. 149.

245.     During the relevant time period, Jobsite Class Plaintiffs were "employees" of

Pereira-Entity Defendants within the meaning of M.G.L. c. 149.

246.     During time relevant hereto, Pereira-Entity Defendants employed Jobsite Class

Plaintiffs within the meaning of M.G.L. c. 149.

247.     Under M.G.L. c. 149, § 148, Pereira-Entity Defendants were required to pay

Jobsite Class Plaintiffs all wages due within six or seven days after the termination of the pay

period in which such wages were earned.

248.     Under M.G.L. c. 149, § 148, Pereira-Entity Defendants were required to pay Jobsite Class Plaintiffs voluntarily leaving their employment all wages due in full on the following regular pay day, or, in the absence of a regular pay day, on the Saturday following his last day of employment.

249.     Under M.G.L. c. 149, § 148, Pereira-Entity Defendants were required to pay Jobsite Class Plaintiffs discharged from employment all wages due in full on the day of their discharge.

250.     During the relevant time period, Pereira-Entity Defendants regularly followed a policy and practice of failing to pay Jobsite Class Plaintiffs within six or seven days after the termination of the pay period in which such wages were earned, in violation of M.G.L. c. 149, § 148.

251.     During the relevant time period, Pereira-Entity Defendants followed a policy and practice of improperly rounded down the time Jobsite Class Plaintiffs worked for purposes of calculating the wages due and thus followed a policy and practice of failing to pay Jobsite Class Plaintiffs the full amount of their wages due, in violation of M.G.L. c. 149, § 148 and the regulations promulgated by the AG thereunder.

252.     During the relevant time period, Pereira-Entity Defendants regularly followed a policy and practice of failing to pay Jobsite Class Plaintiffs voluntarily leaving employment the full amount of wages due on the next required regular pay day or on the following Saturday, in violation of M.G.L. c. 149, § 148.

253.     During the relevant time period, Pereira-Entity Defendants regularly followed a policy and practice of failing to pay terminated Jobsite Class Plaintiffs the full amount of wages due on the day of termination, in violation of M.G.L. c. 149, § 148.

254.    Pereira-Entity Defendants are jointly and severally liable to Jobsite Class Plaintiffs under M.G.L. c. 149, §§ 148 & 150 for their failure to pay Jobsite Class Plaintiffs all wages due within the legally-required time frames.

255.    Pereira-Entity Defendants are jointly and severally liable to Jobsite Class Plaintiffs under M.G.L. c. 149, §§ 148 & 150 for their failure to pay Jobsite Class Plaintiffs all wages due for all time worked.

256.    Pereira-Entity Defendants are also jointly and severally liable to Jobsite Class Plaintiffs under M.G.L. c. 149, §§ 148 & 150 for liquidated treble damages on the amounts due as a result of Pereira-Entity Defendants failure to timely pay wages and failure to pay all wages due for time worked, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

## COUNT X
### VIOLATION OF MASSACHUSETTS EARNED SICK TIME LAW
### M.G.L. c. 149, §§ 148C & 150
### (On Behalf of Plaintiffs Rodrigues, Pinto, Dasilva, Sousa, Pereira-Martins, and Martins-Rodrigue and Similarly-Situated Jobsite Class Plaintiffs)
### (Against All Pereira-Entity Defendants)

257.    Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

258.    This claim is brought on behalf of the Jobsite Class Plaintiffs, including the Jobsite Class Representative Plaintiffs.

259.    This claim is brought against all Pereira-Entity Defendants.

260.    During the relevant time period on or after July 1, 2015, Pereira-Entity Defendants were "employers" of Jobsite Class Plaintiffs within the meaning of M.G.L. c. 149, § 148C and the regulations promulgated by the AG pursuant thereto.

261.    During the relevant time period on or after July 1, 2015, Pereira-Entity
Defendants constituted a single employer and/or joint employers of Jobsite Class Plaintiffs
within the meaning of M.G.L. c. 149, § 148C and the regulations promulgated by the AG
pursuant thereto.

262.    During the relevant time period on or after July 1, 2015, Pereira-Entity
Defendants were "employers of eleven or more employees" within the meaning of M.G.L. c.
149, § 148C and the regulations promulgated by the AG pursuant thereto.

263.    During the relevant time period on or after July 1, 2015, Jobsite Class Plaintiffs
employed after July 1, 2015, were "employees" of Pereira-Entity Defendants within the meaning
of M.G.L. c. 149, § 148C and the regulations promulgated by the AG pursuant thereto.

264.    During time relevant hereto on or after July 1, 2015, Pereira-Entity Defendants
employed Jobsite Class Plaintiffs within the meaning of M.G.L. c. 149, § 148C and the
regulations promulgated by the AG pursuant thereto.

265.    Under M.G.L. c. 149, § 148C and the regulations promulgated by the AG
pursuant thereto, starting on July 1, 2015, Pereira-Entity Defendants were required to provide a
hard or electronic copy of a notice of the M.G.L. c. 149, § 148C prepared by the AG to Jobsite
Class Plaintiffs or include such notice in an employee manual or handbook provided to Jobsite
Class Plaintiffs.

266.    During time relevant hereto on or after July 1, 2015, Pereira-Entity Defendants
followed a policy and practice of failing to either provide the Jobsite Class Plaintiffs employed
after July 1, 2015, the required hard or electronic copy of a notice of the M.G.L. c. 149, § 148C
prepared by the AG or include such notice in an employee manual or handbook provided to
Jobsite Class Plaintiffs.

267.    During time relevant hereto on or after July 1, 2015, Pereira-Entity Defendants followed a policy and practice of failing to allow Jobsite Class Plaintiffs to accrue and use earned sick time for their work for Pereira-Entity Defendants, in violation of M.G.L. c. 149, § 148C.

268.    During time relevant hereto on or after July 1, 2015, Pereira-Entity Defendants followed a policy and practice of failing to pay Jobsite Class Plaintiffs for time off taken in accordance with the provisions of M.G.L, c. 149, § 148C and the regulations promulgated by the AG thereunder for which Jobsite Class Plaintiffs would have had earned sick time had Pereira-Entity Defendants complied with the law, in violation of M.G.L. c. 149, § 148C.

269.    Pereira-Entity Defendants are jointly and severally liable to Jobsite Class Plaintiffs under M.G.L. c. 149, §§ 148C & 150 for their failure to properly notify Jobsite Class Plaintiffs of their rights to earn and use paid sick leave, failure to allow Jobsite Class Plaintiffs to earn and use paid sick leave, and failure to pay Jobsite Class Plaintiffs for leave they took that would have qualified for paid sick leave had Pereira-Entity Defendants complied with the law.

270.    Pereira-Entity Defendants are also jointly and severally liable to Jobsite Class Plaintiffs under M.G.L. c. 149, §§ 148C & 150 for liquidated treble damages on the amounts due as a result of Pereira-Entity Defendants' failure to comply with M.G.L. c. 149, §§ 148C and the regulations promulgated by the AG thereunder, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

**COUNT XI**
**VIOLATION OF MASSACHUSETTS PAYMENT OF WAGES ACT AND**
**FAILURE TO PAY OVERTIME**
**M.G.L. c. 149, §§ 148 & 150; M.G.L. c. 151**
**(On Behalf of Plaintiff Pinto)**
**(Against All Defendants)**

271.    Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

272.    This claim is brought on behalf of Plaintiff Pinto.

273.    This claim is brought against all Defendants.

274.    Under M.G.L. c. 149, § 148, Defendants were required to pay Pinto all wages due within six days after the termination of the pay period in which such wages were earned.

275.    Under M.G.L. c. 151, Defendants were required to pay Pinto Overtime Premium Pay for all time he worked over 40 hours in a workweek.

276.    During the relevant time period, Pinto regularly spent three hours a week or more driving to Weder and Cristina Pereira's home to pick up paychecks for the NL Plaintiffs and drive back to the New Bedford Lumber Yard to deliver such paychecks.

277.    During the relevant time period, some or all of the three or more additional hours a week Pinto worked by driving in order to deliver the NL Plaintiffs' paychecks often were overtime hours.

278.    During the relevant time period, Defendants failed to pay Pinto wages for the time he spent driving in order to deliver the NL Plaintiffs' paychecks.

279.    During the relevant time period, Defendants failed to pay Pinto Overtime Premium Pay for the portion of the three or more additional hours that were overtime hours.

280.     Defendants are jointly and severally liable to Pinto under M.G.L. c. 149, §§ 148 & 150 for their failure to pay him all wages due for all time worked.

281.     Defendants are jointly and severally liable to Pinto under M.G.L. c. 151 for their failure to pay him Overtime Premium Pay for all time he worked over 40 hours in a workweek.

282.     Defendants are also jointly and severally liable to Pinto under M.G.L. c. 149, §§ 148 & 150 and M.G.L. c. 151 for liquidated treble damages on the amounts due as a result of Defendants' failure to pay all wages due for time worked and all Overtime Premium Pay, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

## COUNT XII
## FLSA RETALIATION
### 29 U.S.C. § 215(a)(3)
**(On Behalf of Plaintiffs Rodrigues, Pinto, Dasilva, Sousa, Pereira-Martins, and Martins-Rodrigue and Similarly-Situated NL Collective Plaintiffs)**
**(Against All Defendants)**

283.     Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

284.     Soon after the AG Meeting, National Lumber began terminating NL Collective Plaintiffs that were working at the New Bedford Lumber Yard.

285.     Within a short time after the AG Meeting, National Lumber had terminated all NL Collective Plaintiffs.

286.     On information and belief, National Lumber continued to hire and employ other employees to replace NL Collective Plaintiffs to construct wall panels after it terminated all NL Collective Plaintiffs.

287.     NL Collective Plaintiffs terminated after the AG Meeting were performing their work adequately at the time of their terminations.

288.    The terminations were temporally proximate to the investigation triggered by the filing of the AG Complaint, complaining, *inter alia*, about Defendants' illegal failure to pay NL Collective Plaintiffs Overtime Premium Pay as required by the FLSA.

289.    The Defendants' terminations of NL Collective Plaintiffs after the AG Meeting were caused by and in retaliation for the filing of the AG Complaint complaining about Defendants' illegal failure to pay NL Collective Plaintiffs Overtime Premium Pay as required by the FLSA.

290.    Defendants acted willfully or with reckless disregard as to their obligation to not retaliate against NL Collective Plaintiffs working at the New Bedford Lumber Yard at the time of the AG Meeting by terminating such NL Collective Plaintiffs; the violation was willful for purposes of the FLSA, 29 U.S.C. §§ 255(a) and 260.

291.    Defendants are jointly and severally liable under the FLSA to NL Collective Plaintiffs terminated after the AG Meeting in retaliation for the AG Complaint complaining about, *inter alia*, Defendants' failure to pay Overtime Premium Pay as required by the FLSA.

292.    Defendants are also jointly and severally liable to such NL Collective Plaintiffs for liquidated damages on amounts due as a result of their illegal termination of NL Collective Plaintiffs in retaliation for the filing of the AG Complaint, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

**COUNT XIII**
**RETALIATION FOR WAGE COMPLAINT**
**M.G.L. c. 149, §§ 148A & 150**
**M.G.L. c. 151, § 19**
**(On Behalf of Plaintiffs Rodrigues, Pinto, Dasilva, Sousa, Pereira-Martins,**
**and Martins-Rodrigue and Similarly-Situated NL Class Plaintiffs)**
**(Against All Defendants)**

293.     Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

294.     Soon after the AG Meeting, National Lumber began terminating NL Class Plaintiffs that were working at the New Bedford Lumber Yard.

295.     Within a short time after the AG Meeting, National Lumber had terminated all NL Class Plaintiffs.

296.     On information and belief, National Lumber continued to hire and employ other employees to replace NL Class Plaintiffs to construct wall panels after it terminated all NL Class Plaintiffs.

297.     NL Class Plaintiffs terminated after the AG Meeting were performing their work adequately at the time of their terminations.

298.     The terminations were temporally proximate to the investigation triggered by the filing of the AG Complaint, complaining about, *inter alia*, Defendants' illegal nonpayment of wages and nonpayment of Overtime Premium Pay to NL Class Plaintiffs in violation of M.G.L. c. 149, §§ 148 and M.G.L. c. 151, § 1A.

299.     The Defendants' terminations of NL Class Plaintiffs after the AG Meeting were caused by and in retaliation for the filing of the AG Complaint complaining about, *inter alia*, Defendants' illegal nonpayment of wages and nonpayment of Overtime Premium Pay to NL Class Plaintiffs, in violation of M.G.L. c. 149, §§ 148A and M.G.L. c. 151, § 19.

46

300.    Defendants are jointly and severally liable under M.G.L. c. 149, §§ 148A and M.G.L. c. 151, § 19 to NL Class Plaintiffs terminated after the AG Meeting in retaliation for the filing of the AG Complaint.

301.    Defendants are also jointly and severally liable to such NL Class Plaintiffs for liquidated treble damages on amounts due as a result of their illegal termination of such NL Class Plaintiffs in retaliation for the filing of the AG Complaint, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs Benvindo Rodrigues, Andre Pinto, Marcos Dasilva, Givanildo Sousa, Olavo Pereira-Martins, and Danielson Martins-Rodrigue individually and on behalf of similarly-situated employees, respectfully request as follows:

A.    That Defendants be summoned to appear and answer this Complaint;

B.    For an order of this Honorable Court entering judgment in their favor against Defendants, jointly and severally, in their actual economic damages in an amount to be determined at trial;

C.    For liquidated double and treble damages;

E.    For their attorneys' fees, costs, and pre-and post-judgment interest; and

F.    For such other and further relief, including, but not limited to, injunctive relief, compensatory damages, and punitive damages, as this Court deems necessary, just and proper.

Respectfully submitted,
PLAINTIFFS,
BENVINDO RORIGUES, ANDRE PINTO,
MARCOS DASILVA, GIVANILDO
SOUSA, OLAVO PEREIRA-MARTINS,
and DANIELSON MARTINS-RODRIGUE,
By Their Attorney,


/s/ Chip Muller
Chip Muller, Esq. (BBO #672100)
Muller Law, LLC
47 Wood Avenue
Barrington, RI 02806
(401) 256-5171 (ph.)
(401) 256-5025 (fax)
chip@mullerlaw.com



Plaintiffs Benvindo Rodrigues, Andre Pinto, Marcos Dasilva, Givanildo Sousa, Olavo
Pereira-Martins, and Danielson Martins-Rodrigue, individually and on behalf of all similarly-
situated employees, by and through their attorney, demand a TRIAL BY JURY on all counts so
triable.


/s/  Chip Muller
Chip Muller, Esq. (BBO #672100)


Dated:   March 5, 2019